FILED

July 30 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0089

DA 14-0089

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 218

STATE OF MONTANA,

      Plaintiff and Appellant,

  v.

ROBERT E. SPADY,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC 13-76
Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman
(argued), Assistant Attorney General, Helena, Montana

            Bernie Cassidy, Lincoln County Attorney, Joseph Cik, Deputy County
Attorney, Libby, Montana

      For Appellee:

            Wade Zolynski, Chief Appellate Defender, Koan Mercer (argued),
Assistant Appellate Defender, Helena, Montana

      For Amicus Curiae:

            David M. McLean, Mark R. Taylor, Jessie L. Luther, Browning, Kaleczyc,
Berry & Hoven, P.C., Helena, Montana

Argued: April 27, 2015
Submitted: April 28, 2015
Decided: July 30, 2015

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    The State of Montana appeals from the order of the Nineteenth Judicial District, Lincoln County, remanding the case to Justice Court with instructions to allow Robert Spady to withdraw his plea and grant his motion to dismiss the contempt charges. On February 19, 2015, we issued an order assuming supervisory control over this proceeding. We affirm in part, reverse in part, and address the following issue:

¶2    Whether the District Court erred when it granted Spady's motion to dismiss and concluded that the 24/7 Sobriety Program is unconstitutional.

## BACKGROUND

¶3    Responding to the alarming levels of drunk driving in Montana, the 2011 Legislature enacted the Montana 24/7 Sobriety Program Act, §§ 44-4-1201 through 1206, MCA[1]. The stated purpose of the Act is "to protect the public health and welfare by reducing the number of people on Montana's highways who drive under the influence of alcohol or dangerous drugs; and to strengthen the pretrial and posttrial options available to prosecutors and judges in responding to repeat DUI offenders." Section 44-4-1202, MCA.

¶4    To this end, § 44-4-1205, MCA, permits a court, as a condition of pretrial release of an individual accused of a second or subsequent drunk driving offense, to require the individual to submit to twice-daily alcohol breath tests and payment of the associated fees. Participants pay $2 per test. A person commits the offense of criminal contempt by

---

[1] All references to Montana Code Annotated statutes are to the 2011 version unless otherwise stated.

3

purposely failing to comply with the testing requirements of the 24/7 Sobriety Program. Section 45-7-309(1)(g), MCA.

¶5   Lincoln County officers arrested Robert Spady on April 20, 2013, and charged him with Driving Under the Influence and Careless Driving. Two days later, he appeared in Lincoln County Justice Court for his Initial Appearance and entered a plea of not guilty. Justice of the Peace Sheffield ordered Spady to participate in the 24/7 Sobriety Program as one of eight conditions of his release on bond. Spady had a prior DUI conviction in November 2006.

¶6   Spady missed three tests while enrolled in the 24/7 Sobriety Program. On August 7, 2013, after 113 days of participation, he filed a motion to lift the testing requirement. The Justice Court granted the motion. The Lincoln County Attorney's Office charged Spady with three counts of criminal contempt under § 45-7-309(1)(g), MCA, for the three missed tests. Spady moved the Justice Court to dismiss all contempt charges, arguing that § 44-4-1205, MCA, was unconstitutional on the following grounds: (1) the statute was unconstitutionally overbroad; (2) it violates the Eighth Amendment right to be free from excessive bail;[2] (3) it violates the Equal Protection Rights under the Fourteenth Amendment due to its disparate impact on indigent defendants, specifically infringing their right to travel, right to a jury trial, and their right to privacy from governmental examination of their breath sample; and (4) it violates the Fifth Amendment Due Process right to the presumption of innocence until proven guilty. Spady also argued § 44-4-1205(3), MCA, was unconstitutional as applied to him because he had no

_____

[2] Spady also raised the corresponding rights under the Montana Constitution.

4

opportunity to present evidence of his ability to pay and was charged with a first offense DUI.

¶7     The Justice Court denied Spady's motion to dismiss. The court concluded that the condition imposing the 24/7 Sobriety Program was appropriate due to Spady's diminished privacy expectation and analogized the fees to other fees historically borne by pretrial defendants. The court noted that Spady presented no evidence of his inability to pay the fees, could have moved to amend the imposed conditions at any time under § 46-9-108(2), MCA, and was granted his request to stop participation after 113 days in the program.

¶8     On September 23, 2013, Spady entered into a plea agreement with Lincoln County prosecutors. Pursuant to the agreement, Spady agreed to plead nolo contendere to the contempt charges in exchange for the State's agreement to dismiss the DUI and Careless Driving charges. Spady asked the court to apply the amount he paid in 24/7 Program fees to his fines on the contempt charges, although there is no indication this actually occurred. Additionally, he expressly reserved his right to appeal the Justice Court's order denying his Motion to Dismiss "based on constitutional challenges to Mont. Code. Ann. § 44-4-1205(3)."

¶9     In October 2013, Spady appealed to the District Court and filed a motion to dismiss the contempt charges. After a hearing, the District Court granted the motion to dismiss. The District Court concluded that § 44-4-1205, MCA, specifically the phrase "second or subsequent violation," was unconstitutionally vague and "leads to arbitrary and prejudicial results." Additionally, the District Court concluded that the 24/7 Sobriety

5

Program constituted an improper delegation of legislative authority to the Attorney General for failure to provide objective criteria on the determination of the fee. Finally, the District Court disagreed with the Justice Court's conclusion regarding the fees, holding that the 24/7 Sobriety Program, as a condition of bond, constitutes pretrial punishment that violates the due process rights of criminal defendants.

¶10 Although Spady asked the District Court to remand with instructions to dismiss, the court found that such relief was not within the scope of § 46-12-204(3), MCA. Instead, the District Court remanded the case to the Lincoln County Justice Court with instructions to allow Spady to withdraw his nolo contendere plea, to grant his motion to dismiss the contempt charges, and to proceed to trial on the original charges dismissed under the plea agreement if the State sought to renew them.

¶11 The State appealed the District Court's order to this Court. Although this case was initially filed as a direct appeal, this Court has decided to exercise its power of supervisory control because of the unique procedural obstacles presented in this case. The Court determined supervisory control was necessary to review two questions: (1) the constitutional issues upon which the District Court relied in its order declaring the 24/7 Sobriety Program unconstitutional, and (2) the Fourth Amendment search and seizure implications of the pre-trial 24/7 Sobriety Program. Article VII, Section 2(2) of the Montana Constitution provides this Court with general supervisory control over all other courts. The Supreme Court may exercise its supervisory power over all other courts, on a case-by-case basis. M. R. App. P. 14(3). This extraordinary remedy can be invoked when the case involves purely legal questions and urgent or emergency factors make the

6

normal appeal process inadequate. M. R. App. P. 14(3); *Redding v. McCarter*, 2012 MT 144, ¶ 17, 365 Mont. 316, 281 P.3d 189. The case must meet one of three additional criteria: (a) the other court is proceeding under a mistake of law and is causing a gross injustice; (b) constitutional issues of state-wide importance are involved; or (c) the other court has granted or denied a motion for substitution of a judge in a criminal case. M. R. App. P. 14(3)(a)-(c). We have elected to exercise our power of supervisory control over this case because the case presents purely legal questions, there may not be an adequate remedy on appeal, and constitutional issues of state-wide importance are involved. Oral argument was held on April 27, 2015.

## STANDARD OF REVIEW

¶12 Statutes are presumed to be constitutional. A party challenging a statute's constitutionality must establish, "beyond a reasonable doubt, that the statute is unconstitutional, and any doubt must be resolved in favor of the statute." *State v. Michaud*, 2008 MT 88, ¶ 15, 342 Mont. 244, 180 P.3d 636. The constitutionality of a statute is a question of law, which we review for correctness. *State v. Knudson*, 2007 MT 324, ¶ 12, 340 Mont. 167, 174 P.3d 469. When reviewing a question of constitutional law, including the issue of whether a defendant's due process rights were violated, this Court reviews the district court's conclusion to determine whether its interpretation of the law was correct. *Michaud*, ¶ 15.

## DISCUSSION

¶13    *Issue:    Whether the District Court erred when it granted Spady's motion to dismiss and concluded that the 24/7 Sobriety Program is unconstitutional.*

¶14    At the outset, it is important to clarify which version of the statute is applicable. Spady was arrested on April 20, 2013. The Montana Legislature amended many provisions of the 24/7 Sobriety Program in 2013, including the statutes at issue in the District Court opinion. The amendments became effective on April 26, 2013. In multiple places, the District Court and the parties cite to the 2013 version of the statute, rather than the 2011 statute. We note that the 2011 version of the 24/7 Sobriety Program applies to this case. *State v. McKenzie*, 177 Mont. 280, 318, 581 P.2d 1205, 1227 (1978) *overruled in part on other grounds by State v. Van Kirk*, 2001 MT 184, 306 Mont. 215, 32 P.3d 735.

¶15    The State presents four grounds for reversing the District Court and affirming the Justice Court. First, the State urges this Court to determine that the challenge is collaterally barred by operation of law and affirm the Justice Court's decision without reaching the merits of Spady's claims. Second, the State argues that the District Court lacked jurisdiction over issues including whether the statute authorizes unconstitutional searches and improper delegation, and argues that this Court should reverse the District Court on the constitutional claims. Third, the State maintains we should affirm the Justice Court's conclusion that Spady failed to show that the testing condition violated his constitutional right to substantive due process, equal protection of the law, or the

8

excessive bail clause. Finally, the State maintains that § 44-4-1205(3), MCA, is neither arbitrary nor vague as applied to Spady's case.

¶16 The State argues that Spady should not be permitted to collaterally attack the validity of the underlying court order in his DUI and careless driving case. Under the collateral bar rule, "a judicial order . . . [may] be enforced through criminal contempt even though the underlying decision may be incorrect and even unconstitutional." *In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 725 (9th Cir. 1989). Federal courts have recognized the collateral bar rule (*see Walker v. Birmingham*, 388 U.S. 307, 320, 87 S. Ct. 1824, 1832 (1967)); however, the rule is not mandatory as to the States. *Zal v. Steppe*, 968 F.2d 924, 927 (9th Cir. 1992); *see also State ex rel. Superior Court v. Sperry*, 79 Wn.2d 69, 74, 483 P.2d 608, 611 (1971); *In re Berry*, 68 Cal. 2d 137, 149, 65 Cal. Rptr. 273, 281, 436 P.2d 273, 281 (1968).

¶17 We decline to apply the collateral bar rule at this time. The State did not raise this argument in the District Court and we exercised supervisory control over this case to specifically address the constitutional issues arising out of the 24/7 Sobriety Program. Therefore, it is not necessary to address the State's procedural arguments.

## A. Delegation

¶18 The District Court concluded that § 44-4-1203(2) and (3), MCA, failed to provide sufficient guidance to the Attorney General's Office. Those subsections dealt with evaluating the effectiveness of the program and assessing the hardship of the condition on a pretrial detainee. On appeal, Spady acknowledges that he mistakenly argued the effectiveness and hardship provision of § 44-4-1203(2) and (3), MCA, under the theory

9

of improper delegation. Spady concedes that those provisions were not part of the 2011 statutes; rather, they were part of the 2013 amendment. *See* 2013 Mont. Laws, ch. 309, § 3. The District Court erred when it held that the 2013 version of § 44-4-1203(2) and (3), MCA, constituted an unconstitutional delegation of legislative authority as the 2013 amendments were not yet in effect and had no application to the case at bar. As to the portion of the order related to the 2013 statute, the District Court is reversed.

¶19 Additionally, the District Court held that § 44-4-1204, MCA, provides an unconstitutional delegation of legislative power to the executive branch because it lacks any objective criteria to guide the Attorney General when imposing fees, other than requiring that the fees be "reasonable." The Legislature may delegate its legislative powers to an administrative body so long as it sets forth a policy, rule, or standard for guidance and does not "vest them with an arbitrary and uncontrolled discretion." *In the Petition to Transfer Territory from High Sch. Dist. No. 6*, 2000 MT 342, ¶ 15, 303 Mont. 204, 15 P.3d 447.

¶20 Section 44-4-1204(2), MCA, requires the Attorney General to adopt rules providing for "testing fees for the program, including the collection of fees to pay the cost of installation, monitoring, and deactivation of any testing device." The Legislature did not grant unlimited discretion to the Attorney General to charge whatever fees he desires. Rather, the statute sets forth a clear rule that the fees are to be used for the 24/7 Sobriety Program. The fees are limited to the costs involved in administering the program, to include the "cost of installation, monitoring, and deactivation of any testing device." Section 44-4-1204(2), MCA. A plain reading of § 44-4-1204, MCA, shows that the

10

Legislature limited the fees to reasonable amounts necessary to pay for the administration of the program (i.e. installation, monitoring, and deactivation). We disagree with the contention that the provision gives the Attorney General unfettered discretion when implementing fees and conclude that the statute does not constitute an improper delegation of legislative power. The District Court order is reversed as to this issue.

**B. Search**

¶21 Spady argues that the breath tests constitute an unreasonable search and violate a defendant's right to privacy. The State advances three alternative responses: (1) the search issue is not properly preserved for appeal; (2) the testing is constitutional due to Spady's diminished expectations of privacy and the reasonableness of the condition; and (3) the special needs doctrine supports the constitutionality of the condition.

¶22 Spady properly preserved the issue of privacy below. In his brief to the Justice Court supporting his motion to dismiss, Spady argued that § 44-4-1205(3), MCA, "implicates defendants' privacy rights in that it requires defendants to blow into an intoxilyzer instrument twice a day to determine the presence of alcohol in their body. . . . Thus, defendants' fundamental rights to privacy should apply to their breath samples." In any event, we have decided to exercise supervisory control in part to address the issue of the search and seizure implications of the 24/7 Sobriety Program.

¶23 The Fourth Amendment of the United States Constitution, applied to the states through the Fourteenth Amendment, ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." Article II, Section 11 of the Montana Constitution provides a similar

protection. Further, our Constitution has an additional provision on privacy: "The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest." Mont. Const. art. II, § 10.

¶24 The initial question here is whether the breath test constitutes a search. A search occurs when an individual's reasonable expectation of privacy is violated by the state. *Katz v. United States,* 389 U.S. 347, 361, 88 S. Ct. 507 (1967) (Harlan, J., concurring); *State v. McKeever*, 2015 MT 177, ¶ 16, 379 Mont. 444, ___ P.3d ___. If society is unwilling to recognize the intrusion as a violation of an individual's reasonable privacy expectations, then no search has occurred and the inquiry ends. *State v. Goetz*, 2008 MT 296, ¶ 25, 345 Mont. 421, 191 P.3d 489.

¶25 The drawing of a breath sample is a minimally invasive procedure compared to other methods of gathering evidence. However, the United States Supreme Court has broadly defined the search framework, noting that "virtually any intrusion into the human body" is subject to the Fourth Amendment analysis. *Maryland v. King*, 569 U.S. ___, 133 S. Ct. 1958, 1969 (2013). Under this framework, the Supreme Court has concluded that the Fourth Amendment protections apply to blood draws effected by law enforcement, the scraping of an arrestee's fingernails for evidence, and DNA collected from the inside of an arrestee's mouth. *Maryland*, 569 U.S. at ___, 133 S. Ct. at 1969; *see also State v. Kirkaldie*, 179 Mont. 283, 288, 587 P.2d 1298, 1302 (1978) (holding that a blood alcohol test is a search). Most pertinent to this case, in *Skinner v. Railway Labor Executives' Ass'n.*, the Supreme Court concluded that a breathalyzer test qualifies as a search. 489 U.S. 602, 616, 109 S. Ct. 1402, 1413 (1989). That Court drew upon the

12

similarities between a blood test and a breath analysis, concluding that both tests involve concerns over bodily integrity and qualify as searches. *Skinner,* 489 U.S. at 616-17, 109 S. Ct at 1412-13. Whether the test is slight or "negligible" influences the question of the reasonableness of the search, not the question of whether the intrusion itself qualifies as a search under the Fourth Amendment. *Maryland*, 569 U.S. at ___, 133 S. Ct. at 1969.

¶26 If the intrusion is a search, the Fourth Amendment of the United States Constitution and Article II, Section 11 of the Montana Constitution require the search to be reasonable. *Maryland,* 569 U.S. at ___, 133 S. Ct. at 1969; *Goetz,* ¶ 26. Reasonable searches are typically based on individualized suspicion. *Chandler v. Miller*, 520 U.S. 305, 313, 117 S. Ct. 1295, 1298 (1997). In assessing reasonableness under the Montana Constitution, we consider the nature of the state's intrusion; that is, whether the state action was justified by a compelling state interest or had sufficient procedural safeguards such as a search warrant or other special circumstances. *Goetz*, ¶ 27. Our long-held rule is that searches conducted without a search warrant are *per se* unreasonable without a recognized warrant exception. *Goetz,* ¶ 40. The United States Supreme Court has noted several exceptions that render a warrantless search reasonable, including special law enforcement needs, an individual's diminished expectations of privacy, and when the search constitutes a minimal intrusion. *Maryland*, 569 U.S. at ___, 133 S. Ct. at 1969.

¶27 The reasonableness of a search must be evaluated in the context of that person's expectation of privacy. *Maryland*, 569 U.S. at ___, 133 S. Ct. at 1978. An individual taken into police custody has a diminished expectation of privacy. *State v. Demontiney*, 2014 MT 66, ¶ 12, 374 Mont. 211, 324 P.3d 344. In *Maryland*, the United States

Supreme Court upheld Maryland's practice of swabbing certain arrestees' cheeks for DNA collection purposes. All arrestees charged with certain serious crimes were required to provide a buccal swab from the inside of their cheek. The Court noted that the DNA was useful in a myriad of ways including identifying the individual, assessing the detainee's criminal history, and predicting future dangerousness. *Maryland*, 569 U.S. at ___, 133 S. Ct. at 1971-73. Notably, the Court found that it was reasonable for states to use the database to assess the detainee's unknown criminal past and use that information to revoke his conditional release if necessary. *Maryland*, 569 U.S. at ___, 133 S. Ct. at 1974. In reaching its decision, the Supreme Court noted the difference between the diminished expectations of privacy exception and the "special needs" exception, stating, "the special needs cases, though in full accord with the result reached here, do not have a direct bearing on the issues presented in this case, because unlike the search of a citizen who has not been suspected of a wrong, a detainee has a reduced expectation of privacy." *Maryland*, 569 U.S. at ___, 133 S. Ct. at 1978. We agree and apply the diminished expectation of privacy exception to this case.

¶28 While the Supreme Court and this Court have held that individualized suspicion is not always required in situations where the individual has a diminished expectation of privacy and the search is minimally intrusive, that is not to suggest that any search is constitutional because a person is in custody. *Maryland,* 569 U.S. at ___, 133 S. Ct. at 1979; *Demontiney*, ¶ 12. Some searches, such as searches of the home or highly invasive physical searches may never be reasonable without individualized suspicion. *Maryland*, 569 U.S. at ___, 133 S. Ct. at 1979; *State v. Bassett*, 1999 MT 109, ¶ 39, 294 Mont. 327,

14

982 P.2d 410. The Court must "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." *Maryland*, 569 U.S. at ___, 133 S. Ct. at 1979 (citations omitted); *State v. Tackitt*, 2003 MT 81, ¶ 17, 315 Mont. 59, 67 P.3d 295.

¶29 Here, the question is the reasonableness of requiring a class of arrestees to provide twice-daily breath samples as a condition of release. No one can dispute that drunk driving is a significant issue in Montana, often resulting in tragic consequences. The State has an important interest in keeping the public safe by preventing repeat DUI arrestees from driving while intoxicated. The overarching goal of the 24/7 Sobriety Program is safeguarding the public by reducing the number of intoxicated drivers in Montana. Section 44-4-1202, MCA. The program is narrowly designed to test only arrestees who have a prior record of drunk driving offenses, and the twice-daily tests have a strong capacity to deter drunk driving while on pretrial release. Drunk driving presents a substantial and real risk to the public safety of Montanans and the State has a genuine interest in protecting the public from repeat DUI offenders. *See Miller v. Eleventh Jud. Dist. Ct.,* 2007 MT 58, 336 Mont. 207, 154 P.3d 1186.

¶30 The privacy interests implicated by the breath tests are minimal. An individual on pretrial release has a diminished expectation of privacy. The tests are delivered at a location away from the individual's home (where privacy interests are historically at their highest) and involve little embarrassment or discomfort. The tests do not disclose sensitive medical information, instead revealing only the level of alcohol in the

individual's bloodstream. We cannot say that the defendant's participation in the twice-daily testing infringes a significant privacy interest.

¶31 We conclude that the privacy interests implicated by the breath tests are minimal and the State has an important governmental interest in preventing fatalities on its public roads. Requiring the State to point to specific facts giving rise to reasonable suspicion before testing individuals accused of repeat DUI offenses would significantly hinder the intended purpose of the program. We hold that the 24/7 Sobriety Program, as provided in § 44-4-1205, MCA, does not infringe on the privacy expectations of pretrial detainees and the State's compelling interest outweighs any privacy concerns. Such searches are not per se unreasonable.

**C. Due Process—Excessive Bail**

¶32 The District Court concluded that the fees imposed for the 24/7 Sobriety Program were pretrial punishment in violation of a defendant's due process rights. The District Court specifically took issue with the nonrefundable, indeterminate nature of the fees and distinguished it from other fees traditionally borne by indigent defendants.

¶33 The Fourteenth Amendment of the United States Constitution and Article II, Section 17 of the Montana Constitution guarantee that no person shall be deprived of life, liberty, or property without due process of law. The Due Process clause prohibits the state from subjecting an individual to punishment prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1872 (1979); *Billings v. Layzell*, 242 Mont. 145, 150, 789 P.2d 221, 224 (1990). The *Bell* Court stated the test as follows:

16

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.

*Bell*, 441 U.S. at 535, 99 S. Ct. at 1872.

¶34 While the State may not subject a pretrial detainee to punishment, it may impose conditions on a pretrial detainee so long as they are part of a legitimate governmental purpose and not intended as punishment. *Bell*, 441 U.S. at 539, 99 S. Ct. at 1874; *United States v. Salerno,* 481 U.S. 739, 748, 107 S. Ct. 2095, 2102 (1987). State law allows Montana courts to impose conditions that will ensure the defendant's appearance at trial, but also ensure the safety of the community. Section 46-9-108(1), MCA; *Miller*, ¶¶ 7-8 (upholding the imposition of a high bail for the purpose of protection of the community from a defendant with three previous DUI convictions and a pending charge of Negligent Homicide).

¶35 Spady asserts that the effect of the fee requirement is punitive and amounts to pretrial punishment. We conclude that the fees required under the 24/7 Sobriety Program do not have a punitive effect on pretrial criminal defendants. While the individual must pay $2 for each test, he is free from physical restraint and able to carry on his daily activities. The fee is similar to other fees imposed at the pretrial phase, whereby the defendant forfeits some money for the privilege of release. Additionally, the fee is associated entirely with the cost of the testing program, not with traditional notions of punishment such as restitution or retribution. Even with potential criminal sanctions, the fees themselves are not punitive; both this Court and the United States Supreme Court

have held that a law may still be considered non-punitive even if enforced by criminal sanctions. *State v. Wardell*, 2005 MT 252, ¶ 47, 329 Mont. 9, 122 P.3d 443 (Leaphart, J. specially concurring); *see also Smith v. Doe*, 538 U.S. 84, 96, 123 S. Ct. 1140, 1149 (2003).[3]  Finally, the program's intent is clearly to protect the public from repeat drunk drivers and provide additional pretrial and posttrial prevention options to judges.  Section 44-4-1202(2)(a), (b), MCA.[4]  The program's purpose is squarely within the State's power to protect the health and safety of its citizens.  We conclude that, as written, the fees are not excessive in comparison to the statute's purpose and have no punitive impact on criminal defendants.

¶36    Nonetheless, state law and due process considerations require that the court conduct an individualized assessment of the appropriateness of the condition for each defendant.  Sections 46-9-108(2), -109(2), MCA; *Salerno*, 481 U.S. at 751, 107 S. Ct. at 2103.  Montana courts may impose any reasonable condition on bail that will ensure the appearance of the defendant and the safety of the community.  Section 46-9-108(1), MCA; *Miller*, ¶ 7.  While the district court has broad discretion in fashioning the conditions, they must be the least restrictive conditions necessary to meet the goals of public safety and the appearance of the defendant.  Section 46-9-108(2), MCA; *Miller*, ¶ 7.  Examples of permissible conditions include requiring the defendant to post bail,

---

[3] Spady has not challenged the constitutionality of the criminal contempt statute, § 45-7-309(1)(g), MCA, as applied in this case.  Nor was it decided by the courts below. Therefore, we decline to address the application of § 45-7-309, MCA, to the 24/7 Sobriety Program.

[4] The 24/7 Sobriety Program's purpose was amended in 2013 and 2015, with additions made both sessions.  *See* 2013 Mont. Laws, ch. 309; 2015 Mont. Laws, ch. 312.

maintain employment, obtain mental health or chemical dependency treatment, or return to state custody during specified hours. Section 46-9-108(c), (j)-(l), MCA.

¶37 Although the District Court did not rely on the Excessive Bail Clause of the Eighth Amendment or Article II, Section 22 of the Montana Constitution in its decision, both parties have cited those provisions, and we find that analysis instructive. Bail may not be excessive. U.S. Const. Amend. VIII; Mont. Const. art. II, § 22; *Layzell*, 242 Mont. at 149, 789 P.2d at 223. To protect against excessive bail, courts are constrained by the factors listed in § 46-9-301, MCA. *Layzell*, 242 Mont. at 149, 789 P.2d at 223. Those factors help ensure that the bail is sufficient to protect the community, while not being oppressive to the criminal defendant. For example, when setting bail a court may consider the defendant's prior criminal record, the nature of the offense, and the defendant's financial ability. Section 46-9-301(5)-(7), MCA; *State v. Couture*, 2010 MT 201, ¶ 60, 357 Mont. 398, 240 P.3d 987. Implicit within the above statutory requirements is the necessity for the court to evaluate each case individually to determine the appropriate pretrial conditions to impose on each defendant.

¶38 The imposition of the 24/7 Sobriety Program can be an appropriate condition of release. However, enrollment in the program is discretionary, not automatic, and a court must consider an individual's unique circumstances prior to imposing the testing requirement. A judge should conduct an individualized assessment to consider factors such as prior alcohol-related arrests, whether the defendant's history and circumstances suggest an increased risk to the community, and whether the defendant is financially able to pay the fees associated with testing. Indeed, in 2013, the Montana Legislature codified

an aspect of this assessment, permitting other testing methodologies when the program presents a hardship for an individual or when a program participant requires less stringent testing requirements. 2013 Mont. Laws, ch. 309; § 44-4-1203(2), MCA (2013).

¶39 Here, the record does not support a conclusion that the Justice Court required the 24/7 Sobriety Program as a condition of bail for Spady after conducting an individualized assessment. Nothing in the record indicates that the Justice Court specifically considered whether twice daily testing of Spady was necessary, impractical, or financially feasible. Consequently, because Spady's contempt charges were based on the imposition of the 24/7 Sobriety Program without an individualized assessment, we affirm the District Court's decision to remand the case to the Justice Court with instructions to dismiss the contempt charges.

**D. Vagueness**

¶40 Spady asserts, and the District Court agreed, that the statutory phrase "charged with a second or subsequent violation of 61-8-401 or 61-8-406" is unconstitutionally vague. Section 44-4-1205(3), MCA. Spady argued that the statute was capable of two interpretations. Under one scenario, the court could condition pretrial release on participation in the 24/7 Sobriety Program if the defendant had any prior DUI charges. Thus, there would be a lifetime look-back period. In the second scenario, a court could only impose the condition if a defendant was charged with a second offense within the statutory look-back period, which was five years at the time of Spady's offense. Section 61-8-734, MCA.

¶41    There are two types of vagueness challenges:  "(1) 'facial,' where the statute is so vague that it is void on its face, and (2) 'as-applied,' where the statute is unconstitutional as applied to the facts of a particular situation."  *Knudson*, ¶ 16 (citations omitted). Spady raised both facial and as-applied challenges to § 44-4-1205(3), MCA.

¶42    In 2015, the Montana Legislature amended § 44-4-1205, MCA, clarifying the look-back period.  2015 Mont. Laws, ch. 312.  Spady conceded at oral argument that the newly enacted statute removes the necessity of considering the vagueness issue, in so far as he presented a facial challenge to the statute.  Regarding Spady's as-applied challenge to § 44-4-1205, MCA, we decline to reach the issue.  Because we have already decided to affirm the District Court's decision to remand the case to the Justice Court with instructions to dismiss the contempt charges, it is unnecessary to address the merits of the as-applied vagueness challenge.

**CONCLUSION**

¶43    We reverse the District Court in part and affirm in part.  The District Court's order regarding the delegation of legislative authority provided by the 2013 statute is reversed as the analysis is not pertinent to this proceeding applying the 2011 version of the statute. Further, the District Court's order invalidating the legislative delegation of authority to the Executive Branch regarding the adoption of fees is reversed.

¶44    The breath tests required by the 24/7 Sobriety Program constitute a search. However, the search as applied in § 44-4-1205, MCA, does not violate proscriptions against unreasonable searches and is constitutional.

¶45 Court-ordered enrollment in the 24/7 Sobriety Program does not, on its face, impose pretrial punishment or violate provisions against excessive bail. However, state law and due process considerations require the court to condition pretrial release on participation in the 24/7 Sobriety Program only after conducting an individualized assessment to determine if each defendant is an appropriate candidate for the program. Therefore, the District Court's order remanding the matter to the Justice Court is affirmed.

¶46 Finally, we decline to reach the issue of vagueness as applied to Spady.

¶47 Reversed in part, affirmed in part, and remanded for further proceedings consistent with this Opinion.

/S/ MIKE McGRATH

We Concur:

/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JIM RICE