OP 20-0569

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 201

---

AARON MICHAEL GRAFFT,

      Petitioner,

    v.

MONTANA FOURTH JUDICIAL DISTRICT
COURT, STATE OF MONTANA, AND
SHERIFF T.J. McDERMOTT,

      Respondents.

FILED

AUG 10 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

---

ORIGINAL PROCEEDING: Petition for Writ of Habeas Corpus
                      In and For the County of Missoula, Cause No. DC-20-287
                      Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Petitioner:

           Joan H. Burbridge, Jacob Coolidge, Office of the State Public Defender,
           Missoula, Montana

      For Respondents:

           Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant
           Attorney General, Helena, Montana

           Kirsten H. Pabst, Missoula County Attorney, D. James McCubbin, Jr.,
           Deputy County Attorney, Missoula, Montana

           Colleen Elizabeth Ambrose, Department of Corrections, Helena, Montana

---

                            Decided: August 10, 2021

Filed:

                          _____
                                Clerk

Justice Laurie McKinnon delivered the Opinion and Order of the Court.

¶1 On November 27, 2020, Petitioner Aaron Michael Grafft, through counsel, filed a Petition for Writ of Habeas Corpus, alleging he was unreasonably detained and illegally incarcerated when the Fourth Judicial District Court, Missoula County, refused to release him after he posted bail. In compliance with this Court's December 8, 2020 Order, the Attorney General for the State of Montana has filed a response.

¶2 We observe that Grafft included the District Court and the State of Montana in the caption. We amend the caption to also include the Sheriff for the Missoula County Detention Facility (MCDF). Section 46-22-201(1)(c), MCA.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Both Grafft and the State provide detailed backgrounds, which we summarize here. Grafft has two pending criminal matters in the Missoula County District Court (DC-20-210 and DC-20-287). In DC-20-210, which we will refer to as the "first case," Grafft appeared in Justice Court on May 6, 2020, after being charged with criminal possession of dangerous drugs. He was released on his own recognizance and told to appear at his arraignment on May 18, 2020. On May 12, 2020, the District Court granted the State's Motion for Leave to File an Information charging Grafft with felony possession of dangerous drugs and continued Grafft's release on his own recognizance.

¶4 Grafft's complaint concerns his detention and want of bail in DC-20-287, his second case. In this case, Grafft made an initial appearance in Justice Court on June 11, 2020, and the court released him on his own recognizance and scheduled his arraignment for June 22, 2020. The State charged Grafft with felony criminal possession of dangerous

drugs and misdemeanor possession of drug paraphernalia on June 15, 2020. The District Court released Grafft on his own recognizance with eight conditions of release, including that Grafft not use alcohol or drugs; participate in the Sober Accountability Program (SAP); follow all conditions of probation; and appear at hearings, except for omnibus hearings.

¶5 Grafft did not appear for his two initial appearance hearings—June 8 and June 15—in his first case. The District Court issued an arrest warrant and set bail at $10,000. On June 17, 2020, the Missoula Correctional Services (MCS) representative for SAP filed a report of violation in Grafft's second case indicating Grafft tested positive for methamphetamine on June 16, 2020. Additional reports were filed indicating Grafft had failed to appear for drug testing over the course of several days. On June 22, 2020, the court issued an arrest warrant in Grafft's second case and set bail at $10,000. Grafft was served with the warrants and arrested on June 24, 2020. On June 29, 2020, Grafft appeared by video from MCDF, and the court released him on his own recognizance with the same conditions of release. The District Court also scheduled the omnibus hearing in both cases for August 6, 2020.

¶6 Grafft failed to appear at the August 6, 2020 omnibus hearing.[1] The District Court issued an arrest warrant in his second case and set bail at $25,000. After his arrest, Grafft appeared by video from MCDF on August 20, 2020, and asked to be released on his own

---

[1] This hearing was originally set for July 30, 2020, but the District Court re-scheduled it due to its law and motion calendar. We point out that Grafft was not required to attend an omnibus hearing, according to his initial conditions of release. *See also* § 46-13-110(3), MCA.

recognizance. The court requested pretrial supervision after learning that Grafft was not on probation. The MCS representative for SAP informed the court that Grafft was being monitored but that he absconded. The District Court directed Grafft's counsel to devise a plan with "a little more stringent monitoring because apparently that's what he needs." The court suggested that alcohol may be part of the problem.[2] The District Court sought to reach "a happy medium for keeping him compliant and on task and in court and out of jail."

¶7 At the September 3, 2020 hearing, Grafft's attorney told the District Court that Grafft was waiting on a bed date at a treatment center. Counsel asked that Grafft be released on his own recognizance and for the court to "come up with any combination of conditions that would allow" his release. The State opposed Grafft's release because he had absconded previously from SAP. The State requested that Grafft remain in custody until a bed at the treatment center became available. The District Court ordered that Grafft be detained until a bed opened at the treatment center.

¶8 Despite the court's order, Grafft attempted to post bond of $25,000 for his earlier failure to appear on September 18, 2020. The District Court refused to release Grafft and on September 23, 2020, Grafft requested a hearing. At the September 24, 2020 hearing, counsel for Grafft contended the District Court's refusal to accept bond on September 18, 2020, violated his constitutional right to bail. We include portions of the transcript relevant to Grafft's petition for habeas corpus relief.

> District Court: But you have been unable to put a plan together that will protect the community and preclude him from committing new offenses and

---

[2] Counsel for Grafft contends that Grafft does not have a problem with alcohol. As part of the relief requested, counsel asks that any continuous alcohol monitoring be stricken.

3

reappear. When you want to do that, we will have a hearing on it. Simply giving money to a bondsman is not going to deal with the issues that are presented in this or most of the complex cases that we have to deal with.

Counsel: This is a possession case, to be clear, Judge. This is not a complex case.

District Court: Well, it deals with his addiction issues and his inability to deal with the addiction issues and no plan--

Counsel: So to establish the record, it's your stance that regardless of the bond he posts, that you will not release him?

District Court: You have to analyze the 12 factors and the chemical addiction issues in this case so the Court can be assured that he will reappear and won't commit new offenses.

Counsel: So is the Court unwilling to issue conditions, and subsequently unwilling to release him even if he posts bond?

District Court: If you present an analysis and a plan based on those 12 factors set forth in the statute, the Court will set a hearing and hear both sides. It may be that the State will agree.

Counsel: To be clear, I'm not--I'm referencing his constitutional rights, not any kind of statutory structure. His constitutional right to bail would supersede any kind of statutory scheme requiring complex analysis of factors. He is guaranteed a right to bail under the Montana constitution. And he has been unable to be released, which violates his constitutional rights, which is independent of any statutory scheme in the Montana Code Annotated.

During this hearing, the State offered that it did not oppose Grafft's release if he posted bond and abided by conditions of release. Grafft's counsel represented he would continue to pursue Grafft's application to a treatment program, but stated, "[w]hether or not that is adequate to the [c]ourt, it doesn't give license to have in-depth and indeterminate conditions to invalidate his constitutional right to bail." The District Court asked if MCS could monitor Grafft. The MCS representative reminded the court that Grafft had

4

previously absconded and that they did not have an alcohol monitor. Thereafter, the court ordered that Grafft be released to MCS when they had an alcohol monitor or a GPS unit to monitor Grafft.

¶9 The District Court held another hearing on September 30, 2020. Grafft was still in custody. The MCS representative explained her understanding that MCDF would contact her when Grafft posted bond. The District Court stated that it had ordered Grafft's release on September 24, 2020. The District Court then directed Grafft's counsel to contact a bondsman to post bail. Grafft posted the $25,000 bond on October 2, 2020, whereby the District Court ordered his release that day.

¶10 Grafft has now filed a Petition for Writ of Habeas Corpus, contending that the District Court's refusal to release Grafft after he posted bond was unconstitutional and violated §§ 46-9-102(1), and 46-9-301(4), MCA.

## STANDARD OF REVIEW

¶11 Montana's case law is clear when it comes to issues concerning bail. Bail is a matter within the discretion of the trial court. *State v. London*, 131 Mont. 410, 425, 310 P.2d 571, 580 (1957). "Since the matter is one within the discretion of the court we should not be inclined to disturb its ruling unless a clear abuse of such discretion appears." *London*, 131 Mont. at 425, 310 P.2d at 580.[3] "When a person is imprisoned or detained in custody on any criminal charge for want of bail, the person is entitled to a writ of habeas

---

[3] Both published cases in the annotations for § 46-9-102(1), MCA, dealt with capital murder cases. The statutes at the time were § 2350 of Montana's 1889 Penal Code, as in *State ex rel. Murray v. District Ct.*, 35 Mont. 504, 506, 90 P.3d 513, 514 (1907), and R.C.M. § 94-8303 (1947).

5

corpus for the purpose of giving bail upon averring that fact in the person's petition, without alleging that the person is illegally confined." Section 46-22-103, MCA.

## DISCUSSION

¶12 Grafft requests the following relief: (1) that the condition of release requiring Grafft to wear a continuous alcohol monitoring device be struck; and (2) that the District Court be made "to adhere to previously set conditions of release and grant orders releasing criminal defendants such as [Grafft] when bail is posted." Grafft contends that when he posted bond of $25,000 on September 18, 2020, he should have been released and that failing to do so violated §§ 46-9-102(1), and 46-9-301(4), MCA. He argues that bail may only be set if bail is first "determined to be necessary," pursuant to § 46-9-301, MCA, and that the State must submit proof of its necessity at the outset. *Billings v. Layzell*, 242 Mont. 145, 151-52, 789 P.2d 221, 225 (1990). Grafft asserts his constitutional rights have been violated; specifically, the Fourth Amendment prohibition against unreasonable seizures, the Eight Amendment prohibition against excessive bail clause, and his right to due process protected by the Fourteenth Amendment.

¶13 Grafft states that the District Court set conditions of release on June 15, 2020, and that during Grafft's August 20, 2020 appearance, the District Court imposed an additional condition of pretrial supervision. Grafft contends that release conditions, drug testing, pretrial supervision, and a $25,000 posting of bond were in place when the bondsman appeared with the funds on September 18, 2020, and that he should have been released. Grafft contends that "Montana law does not require a criminal defendant to submit a plan to secure release after posting bond." Section 46-9-106(1), MCA. Grafft further contends

6

that the court's requirement of alcohol monitoring is not supported by the record and is not a reasonable condition. He alleges that the goal posts have been moved which is inconsistent with due process. Grafft argues that the Due Process clause prohibits the government from subjecting an individual to punishment prior to an adjudication of guilt. *State v. Spady*, 2015 MT 218, ¶ 33, 380 Mont. 179, 354 P.3d 590.

¶14 Article II, Section 21, of Montana's Constitution reads that: "All persons shall be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great." Section 46-9-102(1), MCA, provides that: "All persons shall be bailable before conviction, except when death is a possible punishment for the offense charged and the proof is evident or the presumption great that the person is guilty of the offense charged."

> That bail may not be excessive is a fundamental, constitutional principle. U.S. Const. Amend. VIII; Art. II, Sec. 22, Mont. Const. To insure that bail is not excessive, the Montana courts are constrained in setting bail by the eleven factors listed in § 46-9-301, MCA. Within these restrictions, the amount of bail is left to the sound discretion of the trial court and will be upheld if reasonable. *State v. Lance*[], 222 Mont. 92, 105, 721 P.2d 1258, 1267 [(1986)].

*Layzell*, 242 Mont. at 149, 789 P.2d at 223; *see also London*, 131 Mont. at 425, 310 P.2d at 580.

¶15 Courts have the statutory authority to impose conditions of release on bail. Section 46-9-108(1), MCA, provides that "[t]he court may impose any condition that will reasonably ensure the appearance of the defendant as required or that will ensure the safety of any person or the community[.]" Section 46-9-311, MCA, provides that a "court before which the proceeding is pending *may increase or reduce the amount of bail, substitute one*

7

*bail for another, alter the conditions of the bail, or revoke bail.*" (Emphasis added.) Thus, while setting bail in non-capital cases is required, the bail statutes allow a court, in its discretion, to change both the amount of bail and set conditions, in addition to setting bail.

¶16 We summarize Grafft's goings-on from June 2020 through October 2020: at least three releases by the District Court on his own recognizance; three arrest warrants; multiple occasions in which Grafft failed to appear for hearings; Grafft's multiple and continuous use of drugs; and numerous hearings to address Grafft's inability to comply with conditions of release. Grafft cannot demonstrate that he was entitled to bail even after his first violation, let alone after the multitude of violations present on this record. Finally, we cannot conclude that imposition of alcohol monitoring was an abuse of discretion simply based on the charges being for drug possession.

¶17 As a final note, "[A] petition for writ of habeas corpus is moot once the defendant is no longer in custody[.]" *Wier v. Lincoln Cnty. Sheriff's Dep't*, 278 Mont. 473, 475, 925 P.2d 1172, 1173 (1996) (citation omitted). Grafft argues the bail issue is not moot because of the District Court's "long-standing policy [ ] that criminal defendants who have posted bail must appear in front of him for additional conditions of release." However, as the bail statutes clearly provide that courts have the authority and discretion to change bail and to establish conditions, we decline to consider this argument further.

## CONCLUSION

¶18 The purpose of habeas corpus relief is not served by allowing a court to ignore its obligation to consider factors set forth in the bail statutes and exercise its discretion to impose conditions of release tailored to ensure defendants appear for hearings and do not

8

endanger themselves or the community. The District Court exercised its discretion to hold Grafft even though he posted bail after being denied release on his own recognizance. Grafft has not demonstrated any entitlement to relief, and his Petition is denied.

DATED this 10 day of August, 2021.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9