FILED

05/19/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0502

DA 19-0502

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 125

GATEWAY HOSPITALITY GROUP INC., WESTERN
HOSPITALITY GROUP, LP, d/b/a HILTON GARDEN INN
MISSOULA; KALISPELL HOTEL, LLC, d/b/a
HILTON GARDEN INN KALISPELL; BOZEMAN
LODGING INVESTORS, LLC, d/b/a HILTON GARDEN INN
BOZEMAN; JWT HOSPITALITY GROUP, LLC,
d/b/a HILTON GARDEN INN BILLINGS, and JOHN DOES 1-5,

        Plaintiffs and Appellees,

   v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

        Defendant and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 18-1357
Honorable Shane A. Vannatta, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Thomas A. Marra, Marra, Evenson & Levine, P.C., Great Falls,
Montana

      For Appellees:

          Dale R. Cockrell, Jay T. Johnson, Moore, Cockrell, Goicoechea &
Johnson, P.C., Kalispell, Montana

          Jory C. Ruggiero, Domenic Cossi, Western Justice Associates, PLLC,
Bozeman, Montana

Submitted on Briefs:  March 4, 2020

Decided:  May 19, 2020

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion and Order of the Court.

¶1     Philadelphia Indemnity Insurance Company (Philadelphia) appeals from the denial of its motion to dismiss for lack of personal jurisdiction, pursuant to M. R. Civ. P. 12(b)(2), by the Fourth Judicial District Court, Missoula County.

¶2     As argued by Gateway Hospitality Group (Gateway), and the other named Plaintiffs (Entities) (collectively, Plaintiffs or Appellees), a district court's denial of a motion to dismiss for lack of personal jurisdiction is not an appealable order.  *See* M. R. App. P. 6(3)(a)-(k), 6(5)(b).  Therefore, we must first determine whether this matter is presently reviewable by this Court.  Although the parties contest the appealability of the ruling, both sides ultimately take the position that, alternatively, this Court could undertake consideration of the District Court's denial of Philadelphia's motion to dismiss by deeming this matter to be a request for a writ of supervisory control under M. R. App. P. 14, a procedural issue we initially take up.

¶3     This Court may exercise supervisory control over cases pursuant to the authority granted by Article VII, Section 2(2) of the Montana Constitution and Rule 14(3) of the Montana Rules of Appellate Procedure.  *See Inter-Fluve v. Mont. Eighteenth Judicial Dist. Ct.*, 2005 MT 103, ¶ 17, 327 Mont. 14, 112 P.3d 258 (citing *Evans v. Mont. Eleventh Judicial Dist. Ct.*, 2000 MT 38, ¶ 16, 298 Mont. 279, 995 P. 2d 455); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 2019 MT 115, ¶ 5, 395 Mont. 478, 443 P.3d 407.  The Rule provides:

> The supreme court has supervisory control over all other courts and may, on a case-by-case basis, supervise another court by way of a writ of supervisory

3

control. Supervisory control is an extraordinary remedy and is sometimes justified when urgency or emergency factors exist making the normal appeal process inadequate, when the case involves purely legal questions, and when one or more of the following circumstances exist:

   (a) The other court is proceeding under a mistake of law and is causing a gross injustice;

   (b) Constitutional issues of state-wide importance are involved;

   (c) The other court has granted or denied a motion for substitution of a judge in a criminal case.

The Court may invoke its power of supervisory control over a matter brought before the Court by direct appeal. *See, e.g.*, *State v. Spady*, 2015 MT 218, ¶ 11, 380 Mont. 179, 354 P.3d 590. "In determining the propriety of supervisory control for a particular case, we are mindful that it is an extraordinary remedy. Consequently, we have followed the practice of proceeding on a case-by-case basis[.]" *Inter-Fluve*, ¶ 17 (citing *Preston v. Mont. Eighteenth Judicial Dist. Ct.*, 282 Mont. 200, 204, 936 P.2d 814, 816 (1997)).

¶4     In *Ford Motor Co.*, ¶ 7, we reasoned that urgency can render the appeal process inadequate for some cases involving personal jurisdiction, "because the District Court must have power over the parties in a proceeding to afford adequate relief." Several entities operating hotels across the State are parties in this litigation with an out-of-state insurer. An error in the determination of personal jurisdiction could result in the later nullification of extensive litigation efforts affecting many individuals statewide. Our review concludes that the issues in this matter are purely legal. Further, as stated by the Rule, a constitutional issue is at the center of this dispute, that being Philadelphia's due process rights under the Fourteenth Amendment to the United States Constitution. Finally, resolution will serve to

4

further clarify when Montana insureds "may appropriately file suit in Montana courts" against their insurers. *Ford Motor Co.*, ¶ 7.

¶5 For reasons similar to those expressed in *Ford Motor Co.*, we conclude this case has distinctives involving a constitutional issue of state-wide importance and impact that qualifies and merits review pursuant to the Court's constitutional power of supervisory control. Therefore, we accept supervisory control over this matter, and affirm the District Court's ruling. We restate the issues as follows:

1. *Did the District Court deny due process to Philadelphia by failing to hold an evidentiary hearing?*

2. *Did the District Court err by holding Montana had specific personal jurisdiction over Philadelphia under Montana's long arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution?*[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6 Gateway is an Ohio corporation, with its principal place of business in Twinsburg, Ohio. Gateway's business is managing hotels, and it provided hotel management services, including food and beverage management, for the hotel Entities named in this action at the time the subject policy was procured, including: Western Hospitality Group, LP d/b/a

---

[1] Appellees noted in their answer brief that Philadelphia did not brief the issue of subject matter jurisdiction in its opening brief, prompting Philadelphia to summarily discuss that issue in its reply brief. Appellees then sought leave to file a sur-reply brief, arguing that Philadelphia had submitted documents with its reply brief that were not included in the record. Appellees also filed a short brief with their motion. Philadelphia objected to Appellees' motion, and Appellees' filed an amended motion, to which Philadelphia also objected. This Court took the motion under advisement. *Order, issued February 11, 2020.* Even though subject matter jurisdiction generally may be raised at any time, we conclude we do not have properly developed briefing from the parties in this regard and thus decline to undertake review of that issue in this proceeding.

5

Hilton Garden Inn Missoula; Kalispell Hotel, LLC d/b/a/ Hilton Garden Inn Kalispell; Bozeman Lodging Investors, LLC d/b/a Hilton Garden Inn Bozeman; and JWT Hospitality Group, LLC d/b/a Hilton Garden Inn Billings. Each of the Entities is organized under the laws of the State of Montana, and their principal places of business are in Montana. Gateway had the exclusive authority and duty to direct, supervise, manage, and operate the Entities' hotels on a day-to-day basis. Gateway's responsibilities included hiring, paying, and supervising all personnel for the hotels, including food and beverage banquet server-employees. Philadelphia is a Pennsylvania corporation, with its principal place of business in Philadelphia, Pennsylvania.

¶7 Pursuant to its contractual obligation to manage the Entities, Gateway applied in June of 2014 for an insurance policy from Philadelphia (the Policy), to insure both itself and the Entities. On the application, Gateway named itself as the applicant with its principal location in Twinsburg, Ohio, and its nature of business as "hotel and restaurant management and development co." In response to a question asking, "[i]s the Applicant Firm controlled, owned, affiliated or associated with any other firm, corporation or company[,]" Gateway checked the box next to "[y]es." The next question on the application asked Gateway to "list the address(es) of all branch offices and/or subsidiaries. Include a brief description of their operations and indicate if coverage is desired for these offices." In response, Gateway answered "see attached sheets" in all capital letters. On an attached sheet labeled "Equity in Companies," Gateway listed: Western Hospitality group, noting it operated the Hilton Garden Inn in Missoula, Montana; Kalispell Hotel, LLC,

6

noting it operated the Hilton Garden Inn in Kalispell; and JWT Hospitality Group Billings, LLC, noting it operated the Hilton Garden Inn in Billings, Montana. Likewise, Gateway listed under "other entities with no equity:" Bozeman Lodging Investors, LLC, operating the Hilton Garden Inn in Bozeman; Oak Street Partnership, operating the Comfort Inn in Bozeman; and Catron Partners LLC, operating Comfort Suites in Bozeman. On the next attached sheet, Gateway listed its operating hotels and restaurants, and included: Hilton Garden Inn in Missoula, Montana; Hilton Garden Inn in Kalispell, Montana; and Hilton Garden Inn in Billings, Montana. It also listed JWT Hospitality Group Billings LLC, Kalispell Hotel LLC, and Western Hospitality Group LP in a column titled "subsidiaries." The Policy states:

> In consideration of the payment of the premium and in reliance upon all statements and information furnished to us *including all the statements made in the application form, its attachments and the material incorporated therein, which are incorporated herein and deemed to be part of this policy*, we agree as follows: . . . . [(Emphasis added.)]

¶8 The Policy territory extends "to any wrongful act committed anywhere in the world." Under the Policy's definitions, "named entity" means "the proprietor, firm, or organization specified in Item 1 of the Declarations." Gateway is the named entity on the Declarations page. Additionally, under the Policy, "insured" means "the named entity; any subsidiary; and any independent contractor acting on your behalf; any individual insured." Finally, "Subsidiary" is defined as:

> A corporation or other entity of which the named entity owns on or before the inception of the policy period more than 50% of the issued outstanding voting stock either directly, or indirectly through one or more of its subsidiaries or the right to elect, appoint or designate more than 50% of such

7

entity's board of directors, trustees, or managers and which is set forth in the application or, if the entity is a limited partnership, the named entity or one of its subsidiaries must serve as the general partner[.]

¶9 The Policy contains an arbitration endorsement, which states, "[i]f we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then either party may make a written demand for arbitration." It also provides, "[u]nless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located. Local rules of law as to procedure and evidence will apply." Twinsburg, Ohio is the address shown in the Declarations.

¶10 In 2015, employees of the Entities sued the Appellees in Missoula County, Montana,[2] alleging Appellees failed to distribute to the employees 18-20% service charges paid by banquet customers (the Walter Class Action). Appellees submitted a claim to Philadelphia under the Policy, requesting defense and indemnity. Philadelphia denied the claim, asserting the action arose out of intentional employment practices, which were precluded from coverage, and, further, that Policy exclusions applied. In a denial letter, Sedgwick LLP, a law firm representing Philadelphia, identified the Entities as insureds under the Policy. The Appellees subsequently settled the Walter Class Action, and paid the judgment entered against them.

---

[2] *Pam Walter, et al. v. Gateway Hospitality Group, Inc., et. al.*, Montana Fourth Judicial District Court, Missoula County, DV 15-196.

8

¶11 In October of 2018, Appellees as Plaintiffs brought this suit against Philadelphia, seeking declarations that: (1) they were insureds under the Philadelphia Policy; (2) Philadelphia had a duty to defend them in the Walter Class Action; (3) Philadelphia breached its duty to defend them in that action, and (4) Philadelphia had a consequential duty to pay all damages they suffered as a result of the Walter Class Action. Plaintiffs also claimed breach of contract. Philadelphia filed a motion to dismiss based on M. R. Civ. P. 12(b)(1), (2), (3), and (6), asserting lack of personal jurisdiction, lack of standing, lack of subject matter jurisdiction, forum non conveniens, and failure to state a claim upon which relief could be granted. In its brief in support of the motion, Philadelphia requested that Plaintiffs' complaint "be dismissed without an evidentiary hearing." The District Court did not hold an evidentiary hearing on the issues, and in August of 2019, denied Philadelphia's motion on all grounds. Philadelphia filed a notice of appeal stating it "hereby appeals to the Supreme Court of the State of Montana the final Order Denying Philadelphia's Motion to Dismiss for lack of the subject matter jurisdiction," but as noted above, briefed the issue of personal jurisdiction, to which Appellees responded. Upon consideration of the parties' briefing, we undertake supervisory review only of the District Court's denial of Philadelphia's motion to dismiss based on lack of personal jurisdiction under M. R. Civ. P. 12(b)(2).

**STANDARD OF REVIEW**

¶12 This Court reviews a district court's decision on a motion to dismiss for lack of personal jurisdiction *de novo*, construing the complaint "in the light most favorable to the

plaintiff." *Milky Whey, Inc. v. Dairy Partners, LLC*, 2015 MT 18, ¶ 7, 378 Mont. 75, 342 P.3d 13 (quoting *Grizzly Sec. Armored Express, Inc. v. Armored Grp., LLC*, 2011 MT 128, ¶ 12, 360 Mont. 517, 255 P.3d 143) (internal quotations omitted). Additionally, motions to dismiss "should not be granted unless, taking all well-pled allegations of fact as true, it appears beyond a doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Buckles v. Cont'l Res., Inc. (Buckles I)*, 2017 MT 235, ¶ 9, 388 Mont. 517, 402 P.3d 1213 (citing *Threlkeld v. Colorado*, 2000 MT 369, ¶ 7, 303 Mont. 432, 16 P.3d 359). Finally, we review a district court's findings of facts regarding personal jurisdiction to determine whether the findings are clearly erroneous and the conclusions are correct. *Buckles I*, ¶ 9 (citations omitted).

**DISCUSSION**

¶13     *1. Did the District Court deny due process to Philadelphia by failing to hold an evidentiary hearing?*

¶14     Philadelphia argues the District Court erred by making factual findings on issues "at the core of the litigation's coverage dispute" without first conducting an evidentiary hearing on those matters. Philadelphia argues "[i]t was error not to hold an evidentiary hearing if the lower court intended to find facts that were disputed." Specifically, Philadelphia contends that, despite knowing when issuing the policy that Gateway could provide hotel management services anywhere in the world, it was not aware that Gateway intended the Entities to be insured, notwithstanding the District Court's determination that Gateway intended to purchase coverage for the Entities, and, therefore, the District Court should have conducted a hearing on the issue. Appellees respond that this issue was waived

10

because Philadelphia did not ask for an evidentiary hearing, and, in fact, requested the District Court to rule on the motion without holding an evidentiary hearing.

¶15 Generally, this Court will only consider issues that are properly preserved for review. *State v. Johns*, 2019 MT 292, ¶ 12, 398 Mont. 152, 454 P.3d 692 (quoting *State v. Akers*, 2017 MT 311, ¶ 12, 389 Mont. 531, 408 P.3d 142). "The basis for the general rule is that it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Akers*, ¶ 12 (quoting *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, 961 P.2d 100) (internal quotations omitted). "In order to preserve a claim or objection for appeal, an appellant must first raise that specific claim or objection in the district court." *In re T.E.*, 2002 MT 195, ¶ 20, 311 Mont. 148, 54 P.3d 38. In accordance with this rule, in *Johns*, ¶ 20, we held the defendant "failed to preserve a due process challenge to the lack of an evidentiary hearing" when he did not request an evidentiary hearing on the motion at issue.

¶16 Philadelphia does not dispute that it did not request the District Court hold an evidentiary hearing, and indeed, further than the appellant in *Johns*, Philadelphia requested that the District Court rule on its motion without a hearing. Moreover, factual issues Philadelphia now seeks to resolve, such as whether the Entities were properly insured under the Policy, go to the merits of the controversy—coverage and the duty to defend—that need not be reached to resolve the jurisdictional question, as discussed below. While this case is not before us on appeal, we nonetheless decline to undertake supervisory review of the issue in light of the position Philadelphia took before the District Court.

11

¶17    *2. Did the District Court err by holding Montana had specific personal jurisdiction over Philadelphia under Montana's long arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution?*

¶18    Philadelphia argues the District Court erred by "improperly evaluat[ing] Philadelphia's contacts with Montana" and thereby failed to hold that "Philadelphia does not have sufficient minimum contacts with Montana" to establish personal jurisdiction. Additionally, Philadelphia argues the District Court "failed to properly evaluate the due process, justice and fair play requirements" for exercise of personal jurisdiction over Philadelphia. Philadelphia also contends the District Court erred by ignoring the Policy's arbitration provision, which it argues, for purposes of our review here, should also be considered a forum selection clause requiring this matter to be resolved by arbitration in the State of Ohio. Appellees answer the District Court correctly determined that the exercise of personal jurisdiction over Philadelphia complies with both Montana's long arm statute and due process.

¶19    Neither party asserts, nor did the District Court conclude, that a Montana court could exercise general personal jurisdiction over Philadelphia, and thus, our analysis is confined to specific personal jurisdiction. *See Simmons Oil Corp. v. Holly Corp.*, 244 Mont. 75, 83-84, 796 P.2d 189, 194 (1990) (explaining that M. R. Civ. P. 4(b)(1) "incorporates the principles of both general and specific jurisdiction[,]" and that general jurisdiction contemplates "whether the party can be 'found within' the state" meaning that "he or she is physically present in the state or if his or her contacts with the state are so pervasive that he or she may be deemed to be physically present there[,]" whereas specific jurisdiction

12

"may be established even though a defendant maintains minimum contacts with the forum as long as the plaintiff's cause of action arises from any of the activities enumerated in [Montana's long arm statute] and the exercise of jurisdiction does not offend due process."); *see also Buckles I*, ¶ 13 (citing *BNSF Ry. v. Tyrrell*, ___ U.S. ___, 137 S. Ct. 1549 (2017)).

¶20  To determine whether specific personal jurisdiction may be exercised over a nonresident defendant, this Court applies a two-part analysis:  "[f]irst, we determine whether personal jurisdiction exists pursuant to M. R. Civ. P. 4(b)(1).  Second, if personal jurisdiction exists pursuant to M. R. Civ. P. 4(b)(1), we then determine whether exercising personal jurisdiction comports with traditional notions of fair play and substantial justice embodied in the Due Process Clause of the Fourteenth Amendment."  *Buckles I*, ¶ 11 (internal citation omitted); *Ford Motor Co.*, ¶ 10; *Buckles v. Cont'l Res., Inc.* (*Buckles II*), 2020 MT 107, ¶ 12, 400 Mont. 18, ___ P.3d ___.  A finding of specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation, and depends on whether the defendant's suit-related conduct created a substantial connection with the forum state."  *Tackett v. Duncan*, 2014 MT 253, ¶ 19, 376 Mont. 348, 334 P.3d 920 (internal quotations and citations omitted); *Ford Motor Co.*, ¶ 9; *Buckles II*, ¶ 14.

### a.  Montana's long-arm statute

¶21  Montana's long-arm statute, M. R. Civ. P. 4(b)(1), provides,

> any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, any one of the following acts:

(A) the transaction of any business within Montana;

(B) the commission of any act resulting in accrual within Montana of a tort action;

(C) the ownership, use, or possession of any property, or of any interest therein, situated within Montana;

(D) contracting to insure any person, property, or risk located within Montana at the time of contracting;

(E) entering into a contract for services to be rendered or for materials to be furnished in Montana by such person;

(F) acting as director, manager, trustee, or other officer of a corporation organized under the laws of, or having its principal place of business within, Montana; or

(G) acting as personal representative of any estate within Montana.

The parties dispute the applicability of subparts (A) and (D). We address subpart (D).

¶22    In *Seal v. Hart*, 2002 MT 149, 310 Mont. 307, 50 P.3d 522, Seal contracted to sell saddles and tack to Hart for $53,315.86, and to deliver the goods to Hart in Billings, Montana. Hart paid $13,315.86 as a down payment and agreed to remit the remainder upon Hart's transport and sale of the goods in California. Hart was required to obtain insurance to protect against theft or casualty loss of the property before Seal would release the goods. *Seal*, ¶ 5. Hart, a North Dakota resident, contacted his North Dakota insurance agent, Stevens, who arranged for issuance of a policy from Canal Insurance Company (Canal). *Seal*, ¶ 6. At Hart's request, and after a conversation with Seal, Stevens faxed a certificate of insurance to Seals' Billings, Montana, office. *Seal*, ¶ 35. Hart took delivery of the goods in Billings. *Seal*, ¶ 5.

¶23    The goods were subsequently stolen from the transport truck, and a claim was submitted to Canal, which Canal denied because the policy covered only common carriers, which Hart was not. *Seal*, ¶ 9. Seal brought suit against Hart and Stevens in Montana court, alleging breach of contract and breach of a duty to procure insurance. Stevens moved to dismiss the suit for lack of personal jurisdiction, which the District Court denied. *Seal*, ¶ 11. Although on alternate grounds, this Court affirmed the District Court, noting that Stevens knew the cargo to be insured by the policy was located in Billings, Montana, when she arranged for issuance of the policy, and, thus, "Seal's claim for relief arose out of Stevens' contracting to insure property in Montana at the time of contracting," satisfying M. R. Civ. P. 4(b)(1)(D). *Seal*, ¶ 24. Addressing the contention that Stevens had not contracted directly with Seal to insure the property, and thus, owed no duty of care to Seal, we explained that Rule 4(b)(1)(D) "does not require that a plaintiff establish the substantive elements of a contract or a duty of care before a court may exercise personal jurisdiction over a particular party." *Seal*, ¶ 23. Rather, the Rule "simply requires that the claim for relief arise out of the contracting to insure any person, property, or risk located within Montana at the time of contracting." *Seal*, ¶ 23. We explained that "arising from" in this context is "a direct affiliation, nexus, or substantial connection between the basis for the cause of action and the act which falls within the long-arm statute," which was satisfied. *Seal*, ¶ 23 (citations omitted).

¶24    As in *Seal*, the subject Policy and the process of procuring the Policy occurred in another state, requiring a "direct affiliation, nexus, or substantial connection between the

15

basis for the cause of action and the act which falls within the long-arm statute" to establish specific personal jurisdiction in Montana over the insurer for litigation concerning the Policy. *Seal*, ¶ 23. Plaintiffs alleged in their complaint that Philadelphia contracted to insure a risk in Montana and breached its duty to defend them by failing to appear in the underlying suit, as required by the Policy. In support of their allegations, Plaintiffs have offered the policy application, including the attached disclosures with the individual Montana Entities for which Gateway sought coverage, which was made a part of the Policy.

¶25 Although the parties disagree about whether the Entities were subsidiaries and insureds under the Policy, that is a coverage dispute we need not reach to resolve the jurisdictional issue here. *See Carter v. Miss. Farm Bureau Cas. Ins. Co.*, 2005 MT 74, ¶ 20, 326 Mont. 350, 109 P.3d 735 ("[I]t is important to emphasize that this appeal is not about whether Carter and Schmidt are covered by Carter's MFBCIC policy; rather, the question is whether or not they can *litigate the coverage dispute in Montana.*" (emphasis in original)). Further, under Montana law, the duty to defend under a policy is broader than the duty to indemnify, potentially obligating an insurer to appear in litigation before coverage issues are resolved. *See State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, ¶ 37, 372 Mont. 191, 312 P.3d 403 ("The broader duty to defend requires an insurer to act immediately to defend the insured from a claim. The insurer must do so on the basis of mere allegations that could implicate coverage, if proven.") (citation omitted). And, under Montana law, ambiguities in a policy are construed in favor of the insured. *See Kilby Butte Colony, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2017 MT 246, ¶ 10, 389 Mont. 48, 403 P.3d

16

664 ("Any ambiguity in an insurance policy must be construed in favor of the insured and in favor of extending coverage.") (citation omitted).[3]

¶26    Philadelphia failed to appear and defend Plaintiffs in the Walter Class Action, an alleged breach of contract and of the common law, which occurred in Montana. Philadelphia acknowledges that, at the time of contracting, it was aware Gateway could provide hotel management services "anywhere in the world," which it contracted to insure. And, more specifically, because the Montana Entities were disclosed and individually

---

[3] As more fully explained in *Kilby Butte Colony*:

We use the following approach to interpret insurance contracts:

General rules of contract law apply to insurance policies and we construe them strictly against the insurer and in favor of the insured. Courts give the terms and words used in an insurance contract their usual meaning and construe them using common sense. Any ambiguity in an insurance policy must be construed in favor of the insured and in favor of extending coverage. An ambiguity exists where the contract, when taken as a whole, reasonably is subject to two different interpretations. Courts should not, however, seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract.

*Mecca v. Farmers Ins., Exch.*, 2005 MT 260, ¶ 9, 329 Mont. 73, 122 P.3d 1190 (quoting *Travelers Cas. and Sur. Co. v. Ribi Immunochem Research, Inc.*, 2005 MT 50, ¶ 17, 326 Mont. 174, 108 P.3d 469). We read insurance policies as a whole and reconcile the policy's various parts to give each part meaning and effect. Section 33-15-316, MCA; *Newbury v. State Farm Fire & Cas. Co. of Bloomington, Ill.*, 2008 MT 156, ¶ 19, 343 Mont. 279, 184 P.3d 1021. We recognize the reasonable expectations doctrine and have consistently held that the objectively reasonable expectations of insurance purchasers regarding their policy terms should be honored, even if a painstaking study of the policy negates expectations. When applying the doctrine, an insurance contract is to be interpreted from the viewpoint of a consumer with average intelligence, with no training in the law or insurance. *Flathead Janitorial*, ¶ 22 (citing *Leibrand v. Nat'l Farmers Union Prop. & Cas. Co.*, 272 Mont. 1, 7, 898 P.2d 1220, 1224 (1995)).

*Kilby Butte Colony*, ¶ 10.

listed in the application expressly made part of the Policy, Philadelphia was clearly aware that Gateway's business included the active management of hotel entities in Montana at the time it issued the Policy. The denial letter sent by Philadelphia's counsel in response to the claim identified the Entities as insureds under the Policy.[4] The circumstances resemble those in *Seal*, where Defendant Stevens, a North Dakota resident, understood that the property she was contracting to insure was located in Montana at the time the policy was issued. *Seal*, ¶ 24. Philadelphia issued the Policy to Gateway upon its understanding that Gateway conducted business in Montana. As in *Seal*, we conclude there is a "direct affiliation, nexus, or substantial connection" between the basis for the cause of action—a breach of the duty to defend and indemnify Plaintiffs against claims made in the Montana Walter Class Action—and the act falling under the long-arm statute—"contracting to insure any person, property, or risk located within Montana at the time of contracting" by issuance of this particular Policy. M. R. Civ. P. 4(b)(1)(D).

¶27 Philadelphia relies on the Policy's arbitration provision, which it posits is also a forum selection clause, to argue that it managed the risk of the Policy's broad geographic

---

[4] Philadelphia states that its counsel erred by identifying the Entities as insureds under the Policy. We recognize that counsel's action occurred after the time of contracting, and we take no position on the ultimate resolution of coverage issues. We merely cite the evidence in the record supporting the District Court's conclusion that, concerning issues of coverage, Plaintiffs made out a prima facie case that Philadelphia contracted to insure a risk in Montana, with which counsel's action was consistent. *See First Nat'l Bank v. Estate of Carlson*, 2020 U.S. Dist. LEXIS 51089, *3 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2003) (explaining that when the motion to dismiss for lack of personal jurisdiction "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts.").

18

coverage by "requir[ing] any coverage dispute to be litigated in a Summit County, Ohio, arbitral forum, regardless of where events leading to Gateway's insurance claim arose." Thus, while acknowledging third-party claims against Gateway could arise anywhere in the world that would require it to defend locally, Philadelphia asserts that it contracted to resolve first-party coverage disputes with Gateway only in Ohio. However, the Policy's arbitration provision simply does not accomplish what Philadelphia contends. The provision states, "[i]f we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then either party *may* make a written demand for arbitration" (emphasis added), and provides that any arbitration "will take place in the county in which the address shown in the Declarations is located." We note, first, that the provision is voluntary, requiring arbitration only if one of the parties requests it, and does not mandate that arbitration be undertaken in any case. Here, arbitration was never triggered at the time the "claim made against the insured" arose in 2015, because neither party requested it. Philadelphia bypassed it, unilaterally denying Gateway's claim without seeking an arbitration determination of coverage; and Plaintiffs litigated the Walter Class Action on their own. Second, the provision's plain text designates only one particular issue for arbitration: when the parties "do not agree whether coverage is provided for a claim made against the insured." Not encompassed within this optional arbitration provision is other litigation about other issues, such as here: state court civil litigation regarding an insured's claim against the insurer for breach of the duty to defend. As noted above, the duty to defend is broader than the question of coverage.

19

Lastly, the cases Philadelphia cites for its contention that arbitration clauses should be treated as forum selection clauses are distinguishable. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S. Ct. 2449 (1974) (dealing with a mandatory, rather than voluntary, arbitration provision in a securities dispute); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S. Ct. 1917 (1989) (also involving a mandatory arbitration provision and expressing the importance of treating such provisions as forum selection clauses in cases governed by the Securities Act). Consequently, the Policy neither mandated arbitration nor selected another forum for this dispute, and Philadelphia's reliance upon the arbitration provision does not undermine the "substantial connection" between the basis for the cause of action and the act encompassed in the long-arm statute, here, "contracting to insure" a risk located in Montana at the time of contracting. M. R. Civ. P. 4(b)(1)(D).

¶28 We conclude the District Court did not err in holding that Montana courts may exercise personal jurisdiction over Philadelphia under M. R. Civ. P. 4(b)(1)(D).[5]

**b. *Due process under the Fourteenth Amendment to the United States Constitution***

---

[5] Having so concluded, we need not reach the parties' arguments regarding the exercise of jurisdiction under Rule 4(b)(1)(A), requiring the claim for relief to arise from the transaction of business in Montana, which the District Court also held was applicable. The District Court noted Philadelphia's authorization from the Commissioner of Insurance to sell insurance products and to conduct related business transactions in Montana since 1992, its sale of policies of insurance for risks and persons within the State, its authorization of the Commissioner as its agent for service of legal process in Montana, and its issuance of the Policy here upon an application naming the Montana Entities, concluding that "Plaintiffs have made a prima facie showing of jurisdictional facts that, when construing the allegations in a light most favorable to them, the claim for relief arises from Philadelphia's transaction of business in Montana."

20

¶29 Turning to the second inquiry in the analysis, we apply, when analyzing whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice, the three-part test we adopted from the Ninth Circuit Court of Appeals in *Simmons Oil Corp.*:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the laws;
>
> (2) The claim must be one which arises out of or results from the defendant's forum-related activities; and
>
> (3) The exercise of jurisdiction must be reasonable.

*Nasca v. Hull*, 2004 MT 306, ¶ 26, 323 Mont. 484, 100 P.3d 997 (*citing Simmons Oil Corp.*, 244 Mont. at 83, 796 P.2d at 194); *Buckles I*, ¶ 16; *Ford Motor Co.*, ¶ 12. If a plaintiff establishes the first element of the test, a presumption of reasonableness arises, which a defendant can overcome only by presenting a compelling case that jurisdiction would be unreasonable. *B.T. Metal Works v. United Die & Mfg. Co.*, 2004 MT 286, ¶ 34, 323 Mont. 308, 100 P.3d 127 (citing *Simmons Oil Corp.*, 244 Mont. at 85, 796 P.2d at 195).

### *Purposeful Availment*

¶30 "A nonresident defendant purposefully avails itself of the benefits and protections of the laws of the forum state when it takes voluntary action designed to have an effect in the forum. Conversely, a defendant does not purposefully avail itself of the forum's laws when its only contacts with the forum are random, fortuitous, attenuated, or due to the unilateral activity of a third party." *B.T. Metal Works*, ¶ 35 (citing *Simmons Oil Corp.*, 244

21

Mont. at 86, 796 P.2d at 195). This is primarily because a defendant that invokes the forum state's laws by purposeful availment "should reasonably anticipate being haled into court in the forum state" and, therefore, exercising jurisdiction over that defendant is "fundamentally fair." *B.T. Metal Works*, ¶ 35 (citing *Simmons Oil Corp.*, 244 Mont. at 86, 796 P.2d at 195).

¶31    Philadelphia argues "[i]t does not matter to the jurisdictional analysis that Philadelphia knew that Gateway's business involved providing hotel management services to a few Montana entities. The fact that Philadelphia could foresee a potential claim arising from the sale of those services to Montana companies is not the standard for establishing specific personal jurisdiction," citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S. Ct. 556, 566 (1980) ("'[f]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.").

¶32    In *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911 (9th Cir. 1990), Portage, a foreign insurer, insured a vehicle that was involved in an accident in Montana. *Farmers Ins. Exch.*, 907 F.2d at 912. Its policy provided that Portage would "defend in the name and on behalf of any person insured by the Policy and at the cost of the Insurer . . . ." *Farmers Ins. Exch.*, 907 F.2d at 914, n.3. The driver of the vehicle was separately insured by Farmers. When the driver was sued, demand was made upon Portage, as the insurer of the vehicle, to appear and defend the driver. Portage, a Canadian insurer that issued no policies and had no agents in Montana, refused to defend and, thus, Farmers defended and settled the case. Farmers then sued Portage, who in turn raised the absence

22

of personal jurisdiction as a defense. *Farmers Ins. Exch.*, 907 F.2d at 912. The district court ruled in favor of Portage, but the Ninth Circuit reversed, concluding personal jurisdiction could be exercised over Portage in Montana because Portage failed to rebut the prima facie showing that it had voluntarily injected itself into the Montana forum. *Farmers Ins. Exch.*, 907 F.2d at 915. Distinguishing the U.S. Supreme Court's determination that the New York automobile sellers in *World-Wide Volkswagen* had not purposely availed themselves to the jurisdiction of Oklahoma merely because legal action in all states was foreseeable, the Ninth Circuit reasoned regarding Portage's role as an insurer:

> [L]itigation requiring the presence of the insurer is not only foreseeable, but it was purposefully contracted for by the insurer. Moreover, unlike a product seller or distributor, an insurer has the contractual ability to control the territory into which its "product" – the indemnification and defense of claims – will travel.

*Farmers Ins. Exch.*, 907 P.2d at 914. Regarding foreseeability, the U.S. Supreme Court had further explained in *World-Wide Volkswagen*, "[t]his is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297, 100 S. Ct. at 567; *see also Ford Motor Co.*, ¶ 14.

¶33 We conclude that Philadelphia purposely availed itself to the benefits and protections of the laws of Montana and established a connection such that it reasonably should have anticipated "being haled into court" here. Even if *Farmers Ins. Exch.* were to

23

be reevaluated under subsequent jurisprudence of the U.S. Supreme Court, there is a stronger basis in this case for the exercise of jurisdiction than the Ninth Circuit Court found to be sufficient in *Farmers Ins. Exch.* First, there was more than a mere foreseeability that a claim could arise here. Philadelphia had the power to contractually exclude Montana from the Policy's coverage area, but did not do so. Consistent therewith is Philadelphia's authorization by the Commissioner of Insurance to sell insurance products and to conduct related business transactions in Montana since 1992, its sale of policies of insurance for risks and persons within the State, and its authorization of the Commissioner as its agent for service of legal process in Montana. This is the mechanism for being haled into court in Montana. Then, as discussed above, Philadelphia processed an application from Gateway that listed, on several attachments, the company's active business locations in Montana. Upon that knowledge, Philadelphia issued the Policy that incorporated those materials and insured Gateway and, consistent therewith, Philadelphia's counsel later identified the Entities as insureds under the Policy when Gateway presented a claim. As also discussed above, nothing in the Policy, including the arbitration provision, prohibited Montana courts as serving as a forum for this particular dispute between the parties. These actions go further than those upon which the Ninth Circuit Court determined that Portage, a company that sold no policies in Montana, had "purposely availed itself of the Montana forum" and "purposely contracted" for the risk of litigation in Montana. *Farmers Ins. Exch.*, 907 P.2d at 914-15. We consider here not merely the "unilateral acts" by Gateway, as Philadelphia contends, but the entirety of the actions taken by Philadelphia. Given the

24

context of insurance practices, Philadelphia acted purposely, and its contacts with Montana were not merely "random, fortuitous, attenuated, or due to the unilateral activity of a third party." *B.T. Metal Works*, ¶ 35.

¶34 Illustratively, the circumstances here stand in contrast to those in *Carter v. Miss. Farm Bureau Cas. Ins. Co.*, where we held that Montana courts had no personal jurisdiction over the foreign insurer at issue. In *Carter*, Plaintiffs Carter and Schmidt were residents of Mississippi when they purchased automobile insurance from Mississippi Farm Bureau Casualty Insurance Company (MFBCIC), "a remote and strictly regional insurance carrier which does not do business in Montana." *Carter*, ¶ 16. The policy was purchased to insure the Plaintiffs' four vehicles garaged in Mississippi, and Plaintiffs did not advise the insurer that they were moving to Montana. *Carter*, ¶ 5. MFBCIC had no offices or agents, did not advertise, and was not authorized to conduct business in Montana as a foreign insurer. *Carter*, ¶ 11. Several weeks after Plaintiffs moved to Montana, to live here at least part-time, one of Plaintiffs' cars was involved in an accident in Montana, in which Plaintiffs were injured. Plaintiffs settled with the responsible party for payment of the party's liability policy limits, then filed a Montana action against MFBCIC for payment under the underinsured motorist coverage of their MFBCIC policy. *Carter*, ¶ 3. Plaintiffs' MFBCIC policy renewal notices subsequent to the accident were mailed to a Mississippi address, which Plaintiffs were using while in Montana. *Carter*, ¶ 14.

¶35 We recognized that, "[w]hile a promise to provide coverage throughout the United States may establish that an insurer has agreed to submit to jurisdiction in any forum that

25

has jurisdiction to adjudicate claims against its insured, this agreement to defend and indemnify its insured in any state does not imply an agreement to allow its insured to bring suit against it in any state." *Carter*, ¶ 23. Acknowledging that "it is the defendant's forum-related conduct that is at issue," we contrasted the "remote and strictly regional" nature of MFBCIC with "national carrier[s] doing business in Montana," noted the lack of notice to MFBCIC that Plaintiffs were moving to Montana, and the complete absence of any commercial business or any other contacts by the insurer with Montana: "there simply is none on the part of MFBCIC." *Carter*, ¶¶ 17-25. MFBCIC had taken no action to purposely avail itself to the benefits and protections of the law of Montana by establishing any connection such that it reasonably could have anticipated "being haled into court" here.[6] In contrast, Philadelphia has done so here.

¶36 We conclude the District Court did not err in finding Philadelphia purposefully availed itself of the laws of Montana as required to confer specific personal jurisdiction under our three-part test. Additionally, because we reach this conclusion, a presumption of reasonableness arises, which Philadelphia can overcome only by presenting a compelling case that jurisdiction would be unreasonable. *B.T. Metal Works*, ¶ 34.

***The claim arises out of or results from the defendant's forum-related activities***

¶37 We have explained that "[t]he Supreme Court recently clarified the mandatory nature of this prong[,]" and that "[d]ue process requires a connection between the

---

[6] We further concluded that Plaintiffs had failed to carry their burden to establish a basis under M. R. Civ. P. 4(B)(1)(D), for conferring long-arm jurisdiction over MFBCIC. *Carter*, ¶ 29.

defendant's in-state actions and the plaintiff's claim: 'the suit must arise out of or relate to the defendant's contacts with the forum.'" *Ford Motor Co.*, ¶ 18 (citing *Bristol-Meyers Squibb Co. v. Superior Ct.*, ___ U.S. ___, 137 S. Ct. 1773, 1780 (2017)) (emphasis in original). As the Supreme Court further explained, and as we cited in *Buckles I*:

> In order for a state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*. In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.

*Buckles I*, ¶ 17 (citing *Bristol-Myers Squibb Co.*, ___ U.S. at ___, 137 S. Ct. at 1780.

¶38    The relevant portions of the Plaintiffs' complaint, which we have discussed above, allege as follows:

> 24. Philadelphia is in the business of providing insurance insuring risks, persons, and property located in Montana. When it issued the policy to the Gateway Group, Philadelphia expected to insure risks and persons located in Montana. When it issued the Policy to Gateway Group, Philadelphia did insure risks and persons located in Montana. As the Policy insured risks and persons located in Montana at the time the Policy was issued, the Policy contemplated disputes arising in Montana.

> 45. On or about March 3, 2015, Plaintiffs submitted a claim directly to Philadelphia under the Policy requesting defense and indemnity in the Walter Class Action.

> 46. On May 29, 2015, Philadelphia representative Sedgwick LLP wrote to Ron Hutcheson of Gateway. . . . In that letter, Philadelphia, through its authorized representative, denied Plaintiffs' request to Philadelphia, for defense and indemnity to plaintiffs for the Walter Class Action.

> 47. In that May 29, 2015 . . . letter, Philadelphia did not resolve any factual disputes in the Walter Class Action complaint in Plaintiffs' favor. Philadelphia could not make an unequivocal demonstration that the Walter Class Action did not fall within the Policy's coverage. As a result, Philadelphia had a duty to defend Plaintiffs for the Walter Class Action in

Montana. Philadelphia breached that duty. Philadelphia did not defend Plaintiffs for the Walter Class Action and thus, Philadelphia failed to perform its obligations in Montana.

¶39 Established for purposes of this inquiry: Philadelphia issued an indemnity insurance policy to Gateway under which Philadelphia ostensibly provided coverage for Gateway's businesses operations, including those located in Montana; Gateway's businesses were sued in Montana; after Gateway submitted a claim, Philadelphia denied a defense to the Montana Entities in that Montana case; and those Montana businesses therefore sustained the loss of the policy's benefit and acted on their own behalf to defend themselves in the Montana case.

¶40 Considering these circumstances and the context of a liability insurer, this question is not a particularly difficult one. The suit here against Philadelphia arises out of or relates to its contacts with Montana, including its issuance of the Policy to Gateway pursuant to its authorization to do business here. All actions giving rise to Plaintiffs' claims occurred here: the initiation of the Walter Class Action against the Plaintiffs in Montana court, the denial of a defense to Plaintiffs in Montana court by Philadelphia under the Policy, and the Plaintiffs' action to defend themselves. We conclude the District Court did not err in finding Plaintiffs' claim "ar[ose] out of or result[ed] from the defendant's forum-related activities," as required to impose specific personal jurisdiction over Philadelphia under the Fourteenth Amendment to the United States Constitution.

*Reasonableness*

¶41    This court considers seven factors when examining the reasonableness of jurisdiction:

> (1) The extent of the defendant's purposeful interjection into Montana;
> (2) The burden on the defendant of defending in Montana;
> (3) The extent of conflict with the sovereignty of the defendant's state;
> (4) Montana's interest in adjudicating the dispute;
> (5) The most efficient resolution of the controversy;
> (6) The importance of Montana to the plaintiff's interest in convenient and effective relief; and
> (7) The existence of an alternative forum.

*Nasca*, ¶ 32 (citing *Simmons Oil Corp.*, 244 Mont. at 87-88, 796 P.2d at 197). Each factor does not need to be proven for the court to assume jurisdiction, "[r]ather, the factors simply illustrate the concepts of fundamental fairness, which must be considered in each jurisdictional analysis." *Simmons Oil Corp.*, 244 Mont. at 88, 796 P.2d at 197.

¶42    As explained above, if a court concludes the defendant purposefully availed itself of the forum state's laws under the first part of the three-part test, reasonableness is presumed, and must be overcome by compelling case that jurisdiction would be unreasonable. *B.T. Metal Works*, ¶ 34. However, Philadelphia does not include in its briefing a developed argument demonstrating why Montana's exercise of personal jurisdiction would be unreasonable. Indeed, Philadelphia essentially ignores this third part of the test altogether. Therefore, it clearly has not presented a "compelling case" to overcome the presumption of reasonableness.

¶43    Even so, there are several reasons why Montana's jurisdiction in this case would be reasonable under the factors. As discussed above, Philadelphia sells insurance in Montana

and, by extension, litigates insurance claims in Montana. Therefore, defending this action in this forum would likely cause little additional burden to Philadelphia, which it is well positioned to undertake. Philadelphia, a Pennsylvania company, has presented no argument explaining why defending in Montana would impose any greater burden than defending in another foreign jurisdiction, the State of Ohio, where it has suggested the matter should be litigated. The case presents no conflict with the sovereignty with Philadelphia's home state of Pennsylvania. Montana courts provide a forum for the most efficient and convenient resolution of the controversy, as the Plaintiffs and their agents are sited here. Perhaps most importantly, Montana has a significant interest in adjudicating this dispute. As the District Court reasoned, "as a matter of public policy, Montana has an interest in adjudicating a complaint for declaratory judgment when the underlying suit is brought in Montana and an insurer concludes that coverage is not available and does not defend an insured in that Montana action."

¶44 Philadelphia has not presented a compelling case that jurisdiction would be unreasonable to overcome the presumption of reasonableness. Likewise, examining the factors relevant to our consideration of reasonableness, we conclude the District Court did not err in finding that it was reasonable for Montana to exercise personal jurisdiction over Philadelphia in this case.

**CONCLUSION**

¶45 We accept Philadelphia's deemed petition for supervisory control for the reasons stated herein. We agree with the District Court's determination that a Montana court may exercise specific personal jurisdiction over Philadelphia regarding Plaintiffs' claims herein.

¶46 IT IS THEREFORE ORDERED Philadelphia's deemed Petition for a Writ of Supervisory Control is GRANTED and the District Court's order denying Philadelphia's motion to dismiss for lack of personal jurisdiction is AFFIRMED.

¶47 The Clerk is directed to forward a copy of this Opinion and Order to all counsel of record in the Fourth Judicial District Court Cause No. DV-18-1357, and to the Honorable Shane A. Vannatta, presiding District Judge.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR